United States District Court
District of Massachusetts

| | |
|---|---|
| ADA SOLUTIONS, INC., ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ENGINEERED PLASTICS, INC., ) <br> ACCESS PRODUCTS, INC., WHITE CAP ) <br> CONSTRUCTION SUPPLY, INC. and HD ) <br> SUPPLY CONSTRUCTION SUPPLY, LTD., ) <br> Defendants. ) <br> ) | Civil No. <br> 10-11512-NMG |

MEMORANDUM & ORDER

GORTON, J.

This case arises from a patent dispute between plaintiff ADA Solutions, Inc. ("ADA Solutions") and defendants White Cap Construction Supply, Inc. ("White Cap"), HD Supply Construction Supply, Ltd. ("HD Supply"), Engineered Plastics, Inc. ("EPI") and Access Products, Inc. ("Access") concerning sidewalk tactile warning systems designed to warn disabled pedestrians of dangers. Pending before the Court is defendants' motion to stay this action pending <u>inter</u> <u>partes</u> patent re-examination.

I. **Background**

On August 24, 2010, the United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 7,779,581 ("the '581 patent"), which was promptly assigned to ADA Solutions. Ten days later, ADA Solutions filed a complaint alleging that replaceable

-1-

cast-in-place tactile warning systems sold by EPI and Access infringed upon the '581 patent. On February 25, 2011, ADA Solutions amended its complaint to add White Cap, a distributor for EPI and Access, as a defendant.

During discovery, defense counsel informed ADA Solutions that Australian Patent No. 21,483/35 ("the Tranfixigns patent") may invalidate the '581 patent. In light of that notice, ADA Solutions filed with the PTO a request for ex parte re-examination of the '581 patent on May 4, 2011. On May 26, 2011, EPI filed a request for inter partes re-examination of the '581 patent in light of the Tranfixigns patent and ten other prior art references. The PTO granted EPI's request on June 24, 2011. Three days later, defendants filed this motion to stay litigation pending inter partes re-examination.

## II. Legal Analysis

A district court may, but is not required to, grant a stay in a patent case pending re-examination of a patent by the PTO. Alps South, LLC v. The Ohio Willow Wood Co., No. 8:09-cv-00386-T-EAK-MAP, 2010 WL 2465176, at *1 (M.D. Fla. June 16, 2010). Allowing the PTO to determine complex, re-examination-specific issues of a patent's validity may resolve disputed issues, simplify these issues for trial or obviate the need for trial altogether. Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983). On the other hand, permitting an extended stay

-2-

pending re-examination may prejudice valid patent-holders by preventing them from vindicating their rights for five to seven years. See Sunbeam Prods. v. Hamilton Beach Brands, Inc., No. 3:09cv791, 2010 WL 1946262, at *4 (E.D. Va. May 10, 2010). These conflicting considerations help to explain why Congress declined to include an automatic stay provision in the patent re-examination statutes and instead left the matter within the sound discretion of the courts. Nidec Corp. v. LG Innotek Co., No. 6:07cv108, 2009 WL 3673433, at *2 (E.D. Tex. April 3, 2009).

Courts consider three factors when deciding whether to grant a stay pending re-examination of a patent:

> 1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party;
>
> 2) whether a stay will simplify the issues in question and trial of the case; and
>
> 3) whether discovery is complete and whether a trial date has been set.

Gryphon Networks Corp. v. Contact Center Compliance Corp., No. 10-10258-MBB, 2011 WL 2383669, at *2 (D. Mass. June 13, 2011). This Court will examine each factor in turn.

**1. Prejudice**

The first and arguably most important factor is whether and to what extent a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. The moving party bears the burden of showing that the non-moving party will not be prejudiced by a stay. Mike's Train House, Inc. v. Broadway Ltd.

-3-

Imports, LLC, No. JKB-09-2657, 2011 WL 836673, at *2 (D. Md. March 3, 2011).

A common complaint among litigating patent-holders is that a stay prevents them from vindicating their patent rights for an extended period of time. E.g., Sunbeam Prods., 2010 WL 1946262, at *4. This prejudice is heightened when parties to litigation are direct competitors; in such cases, courts presume that a stay will prejudice the non-movant. Tesco Corp. v. Weatherford Int'l, Inc., 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009). While money damages may adequately compensate for a patent-holder's stay-period infringement losses in some cases, the possibility remains that the patent holder could lose market share or drop out of the market entirely during that period. Sunbeam Prods., 2010 WL 1946262, at *4.

The parties to this case dispute the likely amount of time that a stay would delay the proceedings but even a conservative estimate of a delay of several years is "long enough to work considerable prejudice upon the non-moving party."[1] Sunbeam Prods., 2010 WL 1946262, at *3. By contrast, if the case is tried in this Court in March 2013, as scheduled, the entire

---

[1] Defendants emphasize that inter partes re-examination proceedings are expedited where there is co-pending, stayed litigation. Plaintiff counters by citing the 2010 re-examination statistics released by the PTO, which indicate that inter partes re-examinations involving participating patent owners average over six and a half years, including appeals.

-4-

dispute may be resolved within two years, probably before the re-examination process is concluded at the PTO.

Compounding the prejudice that a stay would work on ADA Solutions is the fact that the parties are direct competitors in a relatively narrow sector of the ADA-compliance industry. Although money damages could remedy some of ADA Solutions' infringement losses during the stay period, the risk of loss of market share is particularly high in this growing market where contractors and government agencies develop lists of preferred vendors to be used for projects. Furthermore, given design differences between the products, defendants' tactile warning systems could not be easily replaced by ADA Solutions products if defendants' products are damaged or recalled from the market.

Given these circumstances, a stay would unduly prejudice ADA Solutions.

### 2. Issue simplification

The second factor is whether a stay will simplify the particular issues in dispute and streamline the trial process. In some cases, waiting for the outcome of a re-examination will eliminate the need for trial if all claims are invalidated or, if some survive, will facilitate the trial process by allowing the Court to draw upon the PTO's expertise. Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983). In others, where re-examination will potentially eliminate only one or two issues

among many, a stay is generally unwarranted. IMAX Corp. v. In-Three, Inc., 385 F. Supp. 2d 1030, 1032 (C.D. Cal. 2005).

Re-examination may result in some simplification but the Court is not convinced it would be significant in this case. Defendants have maintained that the '581 patent is invalid for failure to satisfy one or more of the conditions for patentability specified in 35 U.S.C. §§ 101-103, 111-113, and 132. Defendants have also asserted myriad federal and state counterclaims against ADA Solutions, including allegations of false advertising, defamation, tortious interference with business relationships and deceptive trade practices. The re-examination process considers only the validity of the subject patent with regard to prior art; the PTO does not analyze counterclaims or other grounds for patent invalidity. In the case at bar, then, these issues would remain and would ultimately require attention from this Court even if some claims were amended or disposed of during re-examination.

In sum, while staying the action until re-examination is complete would undoubtedly simplify some of the disputed issues, it cannot dispose of all of defendants' invalidity defenses or counterclaims, nor is it certain to simplify all of the prior art disputes. For those reasons, the Court finds that this factor counsels against a stay.

### 3. Timing

The final factor to consider is the stage of litigation at the time the stay is requested. In the interest of judicial economy, courts tend to deny stay requests when cases have proceeded past discovery and are scheduled for trial. E.g., Boston Scientific Corp. v. Cordis Corp., 777 F. Supp. 2d 783, 789 (D. Del. 2011). That does not, of course, warrant the stay of every case in its early stages:

> As a case progresses through the stages of litigation, the grant of a stay generally becomes more costly to the parties and to the court. Yet, just as the absence of a negative inference does not create a positive inference, so also the lesser cost of granting a stay early in the litigation process does not equate to a factor favoring a stay; the lower cost simply indicates the best time to grant a stay is in the early stages of litigation.

Sunbeam Prods., 2010 WL 1946262, at *3.

The parties dispute how to characterize the current stage of this action. Defendants argue that the case is "in its infancy," stressing that discovery is not complete, no Markman hearing has taken place and trial is not scheduled to begin until March 2013. ADA Solutions disagrees with that characterization, explaining that "substantial discovery" has taken place and that discovery would be complete but for defendants' dilatory tactics.

Notwithstanding the state of discovery, this case is clearly in its early stages: discovery is not complete, expert reports have not been exchanged, the Markman hearing has not taken place,

summary judgment motions have not been filed and the Court has not begun its claim construction. Nevertheless, as the Sunbeam court pointed out, this factor does not compel a stay but rather is one measure of whether it is prudent to stay the litigation or not. As the foregoing analysis makes clear, a stay would not be prudent in this case and the Court declines to enforce one.

### ORDER

In accordance with the foregoing, defendants' motion to stay this action pending inter partes patent re-examination (Docket No. 48) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated October 7, 2011